*In re* CHIN A ON and others.

*District Court, D. California.* November 8, 1883.)

1. HABEAS CORPUS—CHINESE TREATY OF 1880 AND THE ACT OF 1882—CERTIFICATE REQUIRED FROM CHINESE ON LANDING—CONSTRUCTION.

   Before a court will impute to congress an intention to violate an important article of a treaty with a foreign power, that intention must be clearly and unequivocally manifested, and the language of the law which is supposed to constitute the violation must admit of no other reasonable construction.

2. CONSTRUCTION OF ACT OF 1882.

   The sections of the act of congress of 1882, regulating the landing of Chinese in this country, and requiring the production of the certificate named in said act by Chinese seeking to land in this country, must be construed as referring to Chinese laborers who might leave the United States, and to Chinese persons who might leave China, after the law went into effect, and not to Chinese laborers who might leave this country before that period. The case of such laborers was not provided for, and was probably overlooked.

*Habeas Corpus.*

*S. G. Hilborn,* U. S. Atty. for the district of California, on behalf of the United States.

*T. D. Reardon,* for certain petitioners.

*A. P. Van Duzer,* for certain other petitioners.

*Milton Andros,* for Williams, Demond & Co., Agents Pacific Mail Steam-ship Company, who held petitioners.

HOFFMAN, J. The question presented for decision in these cases is whether a Chinese laborer who resided in this country at the date of the conclusion of the treaty of November 17, 1880, and who went to China before the act of congress of May 6, 1882, was passed, is entitled to land at this port without producing the certificate required by that act.

The second article of the treaty is as follows:

"Chinese subjects, whether proceeding to the United States as teachers, students, merchants, or from curiosity, together with their body and household servants, and who *are now in the United States, shall be allowed to go and come of their own free will and accord, and* shall be accorded all the rights, privileges, immunities, and exceptions which are accorded to the citizens and subjects of the most favored nation."

"Chinese laborers who are now in the United States" are thus placed upon the same footing as Chinese subjects proceeding to the United States as teachers, merchants, etc., and they, like the latter, are allowed to go and come of their own free will and accord. If they are denied this right it will not be disputed that the denial is a violation of an express stipulation of the treaty. It is urged that by the provisions of the third and twelfth sections of the act of May 6, 1882, the production of the certificate mentioned in the act is imperatively required. It is not disputed that if the stipulations of the treaty and the requirements of the act of congress are found to be irreconcilably conflicting, it is the duty of the court to obey the law, as be-

ing the latest expression of the legislative will, and to leave the question of the breach of the treaty stipulation to be settled by the political branch of the government. But before we can impute to congress an intention to violate an important article of a treaty with a foreign power, that intention must be clearly and unequivocally manifested, and the language of the law, which is supposed to constitute the violation, must admit of no other reasonable construction; and especially should this be so when the supposed violation of the treaty is found in an act of congress, the exclusive object of which, as declared in the title, was "*to execute certain treaty stipulations relating to China.*" The provisions of the third and twelfth sections of the act material to be noticed are as follows:

"Sec. 3. That the two foregoing sections shall not apply to Chinese laborers who were in the United States on the seventeenth of November, 1880, or who shall have come into the same before the expiration of 90 days next after the passage of this act, *and* who shall produce to each master before going on board such vessel, and shall produce to the collector of the port of the United States at which such vessel shall arrive, the evidence hereinafter in this act required of his being one of the laborers in this section mentioned."

The evidence referred to is the certificate of the collector mentioned in the succeeding section. Section 12 is as follows: "That no Chinese person shall be permitted to enter the United States by land without producing to the proper officers of customs the certificate in this act required of Chinese persons seeking to land from a vessel." So far as the provisions of these two sections apply to laborers who have left this country, or to Chinese persons who have left China since the act went into effect, they may be deemed reasonable and proper precautions against the admission into the United States of persons of the prohibited class. But to apply them to laborers who have left the United States before the law went into effect, when no law required a certificate to be procured, and no officer was authorized to furnish it, would be a clear violation of article 2 of the treaty, and a practical denial of the rights thereby secured to the Chinese laborers therein mentioned. For it will not be disputed that the right to "come and go of their own free will and accord" is practically denied, when a condition is annexed to its exercise impossible of performance.

I think, therefore, that in the provisions under consideration congress must be deemed to have referred to Chinese laborers who might leave the United States, and to Chinese persons who might leave China, after the law went into effect, and not to Chinese laborers who might leave this country before that period. The case of such laborers was not provided for, and it was probably overlooked. I am persuaded not only that this construction of the act of congress is required by the general rules which govern the interpretation of apparently conflicting enactments, but that to hold otherwise would be to attribute to the legislative branch of this government a want of good

· faith, and a disregard of solemn national engagements, which, un-
less upon grounds which leave the court no alternative, it would be
indecent to impute to it.   I may add that the same conclusion was
reached by Mr. French, the assistant secretary of the treasury, and
communicated to the collector in a very clear and convincing instruc-
tion under date of October 20, 1882.

The evidence has satisfactorily established that the petitioners were
Chinese laborers residing in the United States at the date of the
treaty, and that they left this country before the passage of the act
of congress of May 6, 1882.   They are, therefore, in my judgment,
entitled to land without producing the certificates required by that
act.