## UNITED STATES v. WILLIAMS.

### (District Court, N. D. California. December 8, 1897.)

### No. 3,453.

1. ALIENS—DEPORTATION OF CHINESE—EVIDENCE OF RESIDENCE.

The provision of the act of May 5, 1892, § 6, as amended by Act Nov. 3, 1893 (28 Stat. 7), that any Chinese laborer found within the jurisdiction of the United States without the certificate of residence required by that act shall be ordered deported unless he shall establish "by at least one credible witness, other than Chinese," that he was a resident on May 5, 1892, leaves no room for construction, and gives the judge before whom such person is brought no discretion to accept any other testimony than that prescribed.

2. SAME.

The power of congress to prescribe such rule of evidence in proceedings for the deportation of Chinese aliens is included within its general authority to exclude aliens, or to prescribe the conditions upon which they may remain in the United States.

3. SAME—PROCEEDINGS—ALLEGATIONS IN COMPLAINT.

Where a complaint is filed for the deportation of a Chinese laborer under 28 Stat. 7, on the ground that he is without the certificate of residence required by that act, an allegation therein that such laborer was a resident of the United States on May 5, 1892, is surplusage, and cannot take the place of the evidence of such fact required to be furnished by the defendant.

Proceeding for the deportation of George Williams, a Chinese laborer.

Bert Schlesinger, Asst. U. S. Atty.

Thomas D. Riordan, for defendant.

DE HAVEN, District Judge. The complaint in this proceeding charges that the defendant, George Williams, was on and before the 5th day of May, 1892, a Chinese laborer, within the limits of the United States, and entitled to remain therein only upon the terms prescribed by the act of congress entitled "An act to prohibit the coming of Chinese persons into the United States," approved May 5, 1892 (27 Stat. 25), and the act of November 3, 1893 (28 Stat. 7), amendatory thereof; and that he had at all times since the first-mentioned date remained, and now is, within the limits of the United States, without having procured the certificate of residence required by the provisions of the said act of May 5, 1892, and the act of November 3, 1893, amendatory thereof. The testimony of the defendant himself was to the effect that he came to the United States about the year 1877, and has since that time regarded the city of New York as his home. On May 5, 1892, he was a steward on board an American ship, and at all times between November 3, 1893, and May 5, 1894, was also a steward on board of an American vessel sailing on the high seas, and without the actual territorial limits of the United States.

By the act of November 3, 1893 (28 Stat. 7), section 6 of the act entitled "An act to prohibit the coming of Chinese persons into the United States," approved May 5, 1892, was amended so as to read:

"And it shall be the duty of all Chinese laborers within the limits of the United States who were entitled to remain in the United States before the passage of the act to which this is an amendment to apply to the collector of internal revenue of their respective districts within six months after the

passage of this act for a certificate of residence; and any Chinese laborer within the limits of the United States who shall neglect, fail, or refuse to comply with the provisions of this act, and the act to which this is an amendment, or who, after the expiration of said six months, shall be found within the jurisdiction of the United States without such certificate of residence, shall be deemed and adjudged to be unlawfully within the United States, and may be arrested, * * * and taken before a United States judge, whose duty it shall be to order that he be deported from the United States, * * * unless he shall establish clearly to the satisfaction of said judge that by reason of accident, sickness, or other unavoidable cause he has been unable to procure his certificate, and to the satisfaction of said United States judge, and by at least one credible witness, other than Chinese, that he was a resident of the United States, on the 5th day of May, 1892." ·

The defendant is a Chinese laborer, and without the certificate of residence required by the acts of congress above referred to, and was the only person who testified to the fact that he was on board an American ship on the 5th day of May, 1892. This being the case, the finding of the special referee that defendant "has not established clearly to my satisfaction, by any witness whatsoever other than Chinese, that he was a resident of the United States on the 5th day of May, 1892," and his conclusion of law "that said defendant is unlawfully within the United States, and not entitled to be and remain therein," must be approved.

The language of the act of congress above quoted, which provides that a Chinese laborer without a certificate of residence must, in a proceeding like this, prove to the satisfaction of the judge, "by at least one credible witness other than Chinese," that he was a resident of the United States on the 5th day of May, 1892, is so clear that by no possible construction would the court be authorized to hold that such fact can be established without the testimony of such witness; and there is nothing in this conclusion which at all conflicts with the cases of In re Chin A On, 18 Fed. 506, and In re Leong Yick Dew, 19 Fed. 490. In these cases it was held, in effect, that the section of the act of congress of May 6, 1882, requiring all Chinese laborers seeking to land in this country to produce before the collector of the port, as the only evidence of their right to land, a certificate signed by a collector of customs, and showing that such laborers were residents of the United States on the 17th day of November, 1880, or had come into the United States before the expiration of 90 days after the passage of said act of May 6, 1882, should not be construed as apply-ly to Chinese laborers who left the United States between November 17, 1880, and the date on which collectors of customs were prepared to issue the certificates provided for by that act. The act thus construed was entitled "An act to execute certain treaty stipulations relating to Chinese"; and Sawyer, circuit judge, in delivering the opinion of the court in Re Leong Yick Dew, 19 Fed. 490, said that it was manifestly the intention of that law "to carry out in good faith the stipulations of the treaty," to the effect that Chinese laborers who were in this country on November 17, 1880, the date of such treaty, should be allowed to go from and come to the United States of their own free will and accord; and it was because any other construction would have been in conflict with such manifest intention that the conclusion was reached in that case that, notwithstanding the

broad language requiring all Chinese laborers to produce the certificates called for by that act, as the only evidence of their right to land in the United States, congress must necessarily have intended to except from such provision those Chinese laborers entitled to enter the United States under that treaty, but who, by reason of their departure from the United States after the date of such treaty, and prior to the time when collectors of customs were prepared to issue the certificates required by that act, could not possibly obtain such certificates. And this construction was approved by the supreme court of the United States in Chew Heong v. U. S., 112 U. S. 554, 5 Sup. Ct. 255, in which case the court said, in construing the same act of May 6, 1882:

"The plaintiff in error left this country after the ratification of the treaty, having the right, secured by its articles, to return, of his own free will, without being subject to burdens or regulations that materially interfere with its enjoyment. The legislative enactments in question should receive such a construction, if possible, as will save that right, while giving full effect to the intention of congress. That result can be attained consistently with recognized rules of interpretation. 'Lex non intendit aliquid impossible' is a familiar maxim of the law. The supposition should not be indulged that congress, while professing to faithfully execute treaty stipulations, and recognizing the fact that they secured to a certain class the 'right to go from and come to the United States,' intended to make its protection depend upon the performance of conditions which it was physically impossible to perform."

But the question presented here is entirely different. In providing that, in a proceeding like this, a Chinese laborer, who is without a certificate of residence, must prove by at least one credible witness, other than Chinese, that he was a resident of the United States on the 5th day of May, 1892, the law does not require a legal impossibility; nor does it impose upon the defendant or others of his race a condition not in harmony with the general intent and object of the statute. It may be inconvenient for the defendant at this time to produce such a witness before the court, and it is possible that there may be no person, other than Chinese, now living, who can testify to the fact necessary for him to show in this case, to wit, that he was a resident of the United States, or, what is the same thing, was, as is claimed by him, sailing in an American vessel upon the high seas, and therefore within the jurisdiction of the United States, at the date of the passage of the act of May 5, 1892. It may be that the law, in making the defendant, or any one of his race, incompetent as a witness to prove such fact, works in this particular case a hardship; but the court cannot, for this reason, suspend its operation. Congress has undoubted power to prescribe the conditions upon which aliens shall be permitted to remain in the United States; and, in the exercise of this power, it might have enacted that any Chinese laborer found in the United States without the certificate of residence required by the act of congress should "be removed out of the country by executive officers, without judicial trial or examination, just as it might have authorized such officers absolutely to prevent his entrance into the country." Fong Yue Ting v. U. S., 149 U. S. 728, 13 Sup. Ct. 1028. And, in the case just cited, it was said, in passing upon the question of the right of congress to require the defendant in this class of cases to prove the fact of his residence by at least one credible white witness:

"The provision which puts the burden of proof upon him of rebutting the presumption arising from his having no certificate, as well as the requirement of proof, 'by at least one credible white witness, that he was a resident of the United States at the time of the passage of this act,' is within the acknowledged power of every legislature to prescribe the evidence which shall be received, and the effect of that evidence, in the courts of its own government."

Indeed, it is perfectly apparent that the plenary authority of congress to prescribe the rules of evidence, or the competency of witnesses, upon the hearing or trial of a proceeding like this, is necessarily included within its general power to exclude aliens, or to prescribe the conditions upon which they shall be permitted to remain in the United States.

It is, however, claimed by the defendant that as the complaint in this proceeding alleges that he was a resident of the United States on the 5th day of May, 1892, the United States is bound by such allegation, and he was not called upon to establish the fact of such residence by proof. This contention presents, in my opinion, the most serious question in the case. It was said in the case of Fong Yue Ting v. U. S., 149 U. S. 729, 13 Sup. Ct. 1028, that in this class of cases "no formal complaint or pleadings are required, and the want of them does not affect the authority of the judge or the validity of the statute." However this may be, I am satisfied that formal pleadings in a proceeding like this are perfectly proper; but it is not necessary for a complaint in such a proceeding to allege anything further than that the defendant is a Chinese person, and is found within the United States without the certificate of residence required by the act of congress of November 3, 1893 (28 Stat. 7). The allegation that defendant was a resident of the United States on May 5, 1892, is therefore to be regarded as surplusage. It was wholly unnecessary, and, in my opinion, such superfluous matter cannot be allowed to take the place of the testimony of one credible witness, other than Chinese, required by the act of congress just referred to. At most, it cannot be regarded as having any greater effect than a mere affidavit; and the affidavit of a credible white witness would not be competent evidence to prove the fact of residence, as required by the act of congress. In other words, the court is not permitted to accept any other proof of the fact of defendant's residence in the United States on May 5, 1892, than that prescribed by the act of congress.

For these reasons, the exceptions to the report of the special referee will be overruled, and a judgment will be entered to the effect that the defendant be deported from the United States to China.